Judge Pauley

07 CV 11424

604-07/GMV/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Pamela L. Schultz (PS 8675)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SIERRA MARINE S.A.,

                Plaintiff                       07 CV

      -against -

BARISSE S.A.,                           **VERIFIED COMPLAINT**

                Defendant.
-------------------------------------------------------------x

      Plaintiff, SIERRA MARNE S.A. ("SIERRA MARINE") by its attorneys Freehill Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant BARISSE S.A. ("BARISSE"), alleges upon information and belief as follows:

      1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party by Defendant BARISSE. The case also falls within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and federal question jurisdiction under 28 U.S.C. §1331. Federal jurisdiction also exists because the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

NYDOCS1/295807.1

2. At all times relevant hereto, Plaintiff SIERRA MARINE was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address in Panama City, Panama.

3. At all times relevant hereto, Defendant BARISSE was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 8 Rue Fernand Neuray, 1050 Bruxelles, Belgium.

4. On or about January 24, 2007, 2007, Plaintiff SIERRA MARINE, as owner, and BARISSE as charterer, entered into a maritime contract of charter party for the carriage of a minimum of 2,500 metric tons of frozen fish in cartons from Walvis Bay, Namibia to Tema, Ghana.

5. Plaintiff SIERRA MARINE S.A. duly delivered the vessel into the service of BARISSE and freight and demurrage were earned.

6. Disputes between the parties arose concerning the outstanding balance of freight and demurrage, which were submitted to arbitration in London.

7. Following the submissions of the parties to the arbitration tribunal, the tribunal rendered an Arbitration Award on November 14, 2007 (hereinafter "the Award") in Plaintiff's favor on liability and costs, a true and accurate copy of which is attached as Exhibit A.

8. The Award provides the following relief to SIERRA:

(a) $26,507.60 at 7.5% compounded quarterly from March 15, 2007 through the date of payment;

(b) Costs of the Award of £1,945 at 7.5% compounded quarterly from the date of payment (November 23, 2007) through the date of payment; and

(c) Costs of the reference incurred by SIERRA, which total an estimated $8,000.

9. Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorney fees, arbitrators' fees, disbursements and interest are recoverable as part of Plaintiff's claim.

10. Despite due demand, no part of the amounts due under the Award has been paid.

11. Plaintiff has fulfilled all obligations required of it under the charter party.

12. This action is brought to obtain jurisdiction over BARISSE and to confirm and enforce the existing Award, to obtain security for execution of the judgment to be entered on the existing Award, as well as to secure the additional claims which will be prosecuted for collection of the sums due under the Award.

13. In addition to the principal amount due under the Award and the interest through the date of filing of the Verified Complaint, SIERRA also seeks security in respect of its claims against BARISSE for the additional sums which are due for future interest through the date of collection, estimated for a period of approximately one year post filing, for a total of $42,681.51.

14. In addition, Plaintiff seeks security for its enforcement costs which are recoverable under London arbitration, and which thus should be included in this application, calculated at $10,000.

15. Upon information and belief, and after investigation, Defendant BARISSE cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant BARISSE (collectively hereinafter, "ASSETS"), including but not limited to ASSETS as may be held,

received, or transferred in its own name or for its benefit at, through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

WHEREFORE, Plaintiff SIERRA MARINE prays:

a.  That process in due form of law according to the practice of this Court issue against Defendant BARISSE, citing it to appear and answer the foregoing, failing which a default will be taken against it for the amounts of the claim as set forth in the Awards and as set forth above, plus interest, costs and attorney fees.

b.  That if Defendant BARISSE cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant BARISSE, up to and including the claim of USD $52,681.51 be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant BARISSE (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in its own name or as may be held, received or transferred for its benefit, at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.  That this Court determine and adjudge Plaintiff entitled to enforce the Award and enter judgment in Plaintiff's favor thereon and against Defendant in the amount of the Award plus interest, costs and the additional recoverable sums due, and otherwise recognize, confirm and enter judgment on the subject Award; and

    d.  For such other, further and different relief as this Court may deem just and proper in the premises.

Dated:  New York, New York  
     December 20, 2007

            FREEHILL HOGAN & MAHAR, LLP  
            Attorneys for Plaintiff  
            SIERRA MARINE, S.A.

          By: _____  
            Pamela L. Schultz (PS 8675)  
            80 Pine Street  
            New York, NY  10005  
            (212) 425-1900  
            (212) 425-1901 fax

## ATTORNEY VERIFICATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

PAMELA L. SCHULTZ, being duly sworn, deposes and says as follows:

1. I am an associate with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
PAMELA L. SCHULTZ

Sworn to before me this
20 day of December, 2007.

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/08

'07 11/26 14:01    ☎ 02007485973    Tim Rayment    02

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN

| | |
|---|---|
| SIERRA MARINE S.A.<br>of Panama | Claimants<br>(Owners) |
| and | |
| BARISSE S.A.<br>of Brussels, Belgium | Respondents<br>(Charterers) |

M.V. "BIANCA"

CHARTER PARTY DATED 24 JANUARY 2007

ARBITRATION AWARD



EXHIBIT A

- 2 -

**WHEREAS:**

1. By an amended GENCON 1976 'Box Type' Charter Party dated 24 January 2007 the Claimants (hereinafter referred to as "the Owners") chartered the "BIANCA" to the Respondents (hereinafter referred to as "the Charterers") for the carriage of a minimum 2,500 mts frozen fish in cartons from, in the event, Walvis Bay roads to Tema.

2. Clause 32 of the Charter Party provided that any dispute arising out of this Charter Party which could not be amicably resolved was to be decided by arbitration in London in the manner therein set forth and it was to be governed and construed in accordance with English law.

3. Disputes did arise between the parties as detailed hereunder and on 9 July 2007 the Owners' lawyers appointed me, the undersigned, Timothy Rayment of 47 Castelnau, London SW13 9RT as arbitrator. On the following day they notified the Charterers by fax of my appointment and they called upon them to appoint an arbitrator of their choice within 14 days.

The Charterers did not respond.

4. On 25 July the Owners' lawyers sent a fax to the Charterers again calling on them to appoint an arbitrator of their choice within 7 clear days failing which I would be appointed as sole arbitrator.

Again the Charterers failed to respond.

5. On 8 August, on application from the Owner's

- 3 -

lawyers, I sent a fax to the Charterers advising them that I had accepted the appointment as sole arbitrator in accordance with Section 17 of the Arbitration Act 1996. I am a Full Member of the London Maritime Arbitrators Association ("LMAA") and The Baltic Exchange, London. I further advised the Charterers as follows:-

"Please note that English law does provide for an arbitrator to proceed to an Award on the Claimants' documents and submissions alone (providing that a case has been made out) should a Respondent (yourselves) refuse or fail to take part in the arbitration.

The next step is for the Claimants to serve their claim submissions and no doubt that will be achieved shortly. You will then be permitted the customary 28 days in which to respond with your defence submissions together with counterclaim, if any."

6. The seat of this arbitration is England and the LMAA Terms (2006) apply, my having accepted my appointment on the basis of those terms.

7. The Owners' lawyers served their claim submissions on 11 September wherein they claimed the sum of US$26,507.60 in respect of a balance of freight and demurrage together with interest and costs.

8. On 16 October, on application from the Owners' lawyers, I sent a fax to the Charterers wherein I made an Order that they serve defence submissions together with counterclaim, if any, by 22 October. I again reminded them of the provisions of English law if they did not

- 4 -

participate in the arbitration procedure.

The Charterers did not respond.

9. On 23 October, on application from the Owners' lawyers, I sent a fax to the Charterers wherein I made a Final and Peremptory Order that they serve defence submissions together with counterclaim, if any, by 31 October failing which I would, without further warning, proceed to my Award. I again reminded them of the provisions of English law if they failed or refused to participate in the arbitration.

The Charterers did not respond within the date set or at all.

10. On 1 November I sent a fax to the Charterers advising them that in the absence of any response from themselves submissions were closed and I was proceeding to my Award.

11. Despite their being given every opportunity to do so, the Charterers did not offer any defence to the claims presented on the Owners' behalf. Notwithstanding that, I considered it my duty to carefully consider the submissions and documents before issuing any Award and that I have done.

12. The following Boxes and Clauses of the Charter Party are relevant to the issues in this arbitration:-

BOXES.

"16.a)  Laytime for loading

- 5 -

      350 nmt per wwd SHINC (See Cl.34)

  b) Laytime for discharging

      300 nmts per wwd SSHEX UU (See Cl.34)

18. Demurrage rate (loading and discharging) (Cl.7)

      US$8,000.00 per day/rata.  Free Despatch".

CLAUSES.

"6. Laytime

(c) Commencement of laytime (loading and discharging)

Laytime for loading and discharging shall commence at 2 p.m. if notice of readiness is given before noon, and at 8 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given see cl.31.

Time actually used before commencement of laytime shall count.

Time lost in waiting for berth to count as loading or discharging time, as the case may be. WIBON WIPON WIFPON WCCON

7. Demurrage see cl.30

demurrage at the rate stated in Box 18 per day or pro rata for any part of a day

- 6 -

**Clause 30**  DEMURRAGE/DESPATCH PAYMENT

Demurrage, if any, to be paid by Charterers 5 days in arrears once agreed that demurrage incurred. Final demurrage to be settled not later than 10 days after receipt of documentation attaching Notices of Readiness/Statements of Facts/Time Sheet, duly signed by Shippers, Receivers (provided signatures obtainable), agents and Master.

**Clause 31**  ETA NOTICES

Notice of readiness to be tendered within the laycan.

Master to cable Shippers and Receivers' agent and Charterers 3/2 days' and 24 hours' notice of ETA loading place.

Master to comply with Charterers written instructions, which to be given before last loading port, regarding the various notices to be cabled to Receivers and agents at discharging port.

**Clause 34**  LAYTIME

Cargo to be loaded/stowed free of risk and expense to the vessel at the rate of 350 nmts per weather working day of 24 consecutive hours and discharged free of risk and expense to the vessel at the rate of 300 nmts per weather working day of 24 consecutive hours.

Laytime to be calculated always basis the minimum quantity of 2,500 nmts, even if loading less, pro-rata more if more cargo. Time load/

- 7 -

discharge reversible in Charterers' option.

At loading Sundays and Holidays are included. At discharge time from 17.00 Hours on Friday or a day before a legal or local holiday until 08:00 hours Monday or the next working day not to count unless used in which case only half time of actual time used to count, unless vessel already on demurrage. Time to count as per Clause 6."

13. Pursuant to the Charter Party, the vessel arrived at Walvis Bay and tendered Notice of Readiness at 1530 on 28 January 2007. She anchored 25 minutes later. The Owners submitted that laytime counted as from 0800 on the following morning which was in accordance with the Charter Party.

14. The vessel loaded directly from two vessels, the "NAMIBIAN STAR" and the "VENUS 1", and loading was completed at 0900 on 1 February. Cargo documentation was obviously delayed because it was not finalised until 2300 on 2 February and the Owners, in their timesheet, counted time until that point. I found they had an entitlement so to do. The vessel sailed the following morning at 0018 and in their timesheet the Owners calculated time used at Walvis Bay amounted to 4 days 15 hours which I found to be correct.

15. The vessel proceeded to Tema where she arrived at 0606 on 9 February 2007 and Notice of Readiness was tendered at the same time. The Owners' submitted timesheet showed that time counted as from 1400 that afternoon again in accordance with the Charter Party. The

- 8 -

timesheet stated that the pilot boarded at 1900 on 26 February and the vessel was 'all fast' at 1854 which was clearly a typo.

16. However, on the same document, the Owners' calculations showed an allowance for shifting time between 1810 and 1900 on 26 February which I accepted as being the correct timing of events and in any event was supported by the Statement of Facts. Discharge operations commenced at 1124 on 27 February and were completed at 1750 on 3 March with cargo documents being placed on board that evening at 2005. The Owners calculated that discharge took 14 days 6 hours resulting in the vessel being on demurrage for 3 days 8 hours 27 minutes.

17. In the event, the vessel loaded a cargo of 2,507.568 nmts of frozen fish in cartons. The Owners calculated that time allowed for loading and discharging amounted to 7 days 3 hours 56 minutes and 8 days 8 hours 36 minutes respectively totalling 15 days 12 hours 33 minutes. This should, of course, be 15 days 12 hours 32 minutes, an error of 'de minimis' proportions which, in the event, made no difference. The total physical time for actual loading and discharging amounted to 18 days 21 hours 1 minute.

18. The resulting time on demurrage of 3 days 8 hours 28 minutes equated to US$26,816.80 or US$26,481.59 nett of commission. I was satisfied that the Owners' claim for demurrage was fully supported and their calculations were correct showing a clear entitlement to the amount claimed in respect of demurrage.

'07 11/26 14:05          ☎ 02087485973          Tim Rayment                    10

- 9 -

19.    The total freight was US$253,264.37 and less commission of 1.25% (US$3,165.80) amounted to US$250,098.57. However, the Owners confirmed having received US$250,072.56, a shortfall of US$26.01 in respect, presumably, of bank charges. The Owners were entitled to receive gross freight and therefore I have added this shortfall to the amount of demurrage resulting in an amount due and awarded to the Owners of US$26,507.60 .

20.    The Owners, having been successful, are awarded interest as particularised below with a commencement date of 15 March 2007 being 10 days after the Owners' invoice date of 5 March 2007 in accordance with Clause 30 of the Charter Party.

21.    The Owners, having been successful, are awarded their costs together with the costs of my Arbitration Award and I reserve to myself the power to determine the Owners' costs in an Award of Costs (if they cannot be agreed) as set out in Section 63 of the Arbitration Act 1996.

22.    NOW I, the said arbitrator Timothy Rayment having taken upon myself the burden of this arbitration, having carefully and conscientiously read and considered the submissions and documents served on the Owners' behalf and the evidence adduced by them

DO HEREBY MAKE, ISSUE AND PUBLISH THIS MY ARBITRATION AWARD, NAMELY

A)    I FIND AND HOLD that the Owners' claim succeeds in full in the amount of US$26,507.60,

- 10 -

B)   I THEREFORE AWARD AND ADJUDGE that the Charterers shall forthwith pay to the Owners the sum of US$26,507.60 (twenty six thousand five hundred and seven United States Dollars and sixty cents) together with compound interest thereon calculated at the rate of 7.50 (seven point five) per cent per annum compounded at three monthly rests from 15 March 2007 until the date of payment in full by the Charterers to the Owners.

C)   I FURTHER AWARD AND ADJUDGE that the Charterers shall bear their own and the Owners' costs in the reference which, unless agreed, shall be determined by me as set out in Section 63 of the Arbitration Act 1996. The Charterers shall also pay the costs, including interlocutories, of this my Arbitration Award in the sum of £1,945.00 (one thousand nine hundred and forty five pounds Sterling) PROVIDED ALWAYS that if, in the first instance, the Owners shall have paid any part of the said costs of this my Arbitration Award they shall be entitled to an immediate refund from the Charterers of the sum so paid together with interest thereon at the rate of 7.50 (seven point five) per cent per annum compounded at three monthly rests from the date of payment until the date of reimbursement in full by the Charterers to the Owners.

GIVEN UNDER MY HAND in London this 14th day of November 2007.

..................................                    ..................................
Timothy Rayment                                        Witness